RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

DALE ROGER SINGLETON; CLAUDE RANDALL
SINGLETON; BRUCE WAYNE SINGLETON,

*Plaintiffs- Appellees*,

*v.*

No. 16-5596

COMMONWEALTH OF KENTUCKY, et al.,

*Defendants*,

MARCHETTA CARMICLE, individual capacity,

*Defendant-Appellant*.

─────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:15-cv-00015—Gregory F. Van Tatenhove, District Judge.

Decided and Filed:  December 6, 2016

Before:  MOORE, SUTTON, and WHITE, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  David Brent Irvin, CABINET FOR HEALTH AND FAMILY SERVICES, Frankfort, Kentucky, for Appellant.  Robert C. "Coley" Stilz, III, Kimberly J. O'Donnell, KINKEAD & STILZ, PLLC, Lexington, Kentucky, for Appellees.

─────────────

## OPINION

─────────────

SUTTON, Circuit Judge.  This dispute concerns a conflict between a provision of the Medicaid statute and a corresponding Kentucky state regulation.  In 2006, in an effort to tighten loopholes in the Medicaid Act that had allowed individuals to transfer assets below fair market

1

value in order to qualify for Medicaid coverage, Congress amended the language of 42 U.S.C. § 1396p(c)(1)(F)(i). A corresponding Kentucky regulation, promulgated just four months later, mistakenly included the pre-amendment language of the provision.

Marchetta Carmicle, the Branch Manager for Eligibility Policy for the Kentucky Department of Medicaid Services, realized that Kentucky law could not contradict the federal Medicaid statute and thus enforced the corrected federal statute, not the uncorrected state regulation. Arguing that Kentucky was authorized by Congress to adopt a less restrictive alternative, the Singletons sued Carmicle and the state agency, claiming a right to relief under the state regulation. Because the federal Medicaid law preempts the contrary state regulation, we reverse the district court's denial of Carmicle's motion to dismiss the claims against her under Civil Rule 12(b)(6).

Medicare does not cover "custodial care," such as the services provided in nursing homes. 42 U.S.C. § 1395y(a)(9). Medicaid does. *Id.* § 1396d(a)(4)(A). By statutory design, an individual who needs custodial care must spend down any assets that exceed the Medicaid eligibility threshold before the government will pick up the tab. The spouse of an institutionalized individual is also required to chip in, but only up to a point. Congress does not consider the healthy spouse's income to be available to the institutionalized spouse, *id.* § 1396r-5(b)(1), and the healthy spouse may exclude a portion of the couple's assets, capped by statute, from consideration when determining Medicaid eligibility, *see Hughes v. McCarthy*, 734 F.3d 473, 475–76 (6th Cir. 2013).

To prevent people from evading these requirements by, say, giving their assets away to their children, the Medicaid statute requires each State to "look back" at an institutionalized individual's financial history to see if he or his spouse has disposed of any assets for less than fair market value in the past three years. In the event a couple makes any such dispositions, the State must strip the patient of Medicaid eligibility to a proportionate extent. *See* 42 U.S.C. § 1396p(c)(1).

The statute nevertheless permits individuals and married couples to dispose of their assets by purchasing a specific type of annuity. Section 1396p(c)(1)(F) says that "the purchase of an

annuity shall be treated as the disposal of an asset for less than fair market value unless [] the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual." By purchasing an annuity structured in this way, a healthy spouse may convert assets that would be counted against the institutionalized spouse's Medicaid eligibility into an uncountable stream of income to the healthy spouse. If the healthy spouse passes away before the full value of the annuity is paid out, however, the State receives the remainder, up to the full value of the care provided to the institutionalized spouse.

In drafting (and passing) this provision, Congress initially made a mistake. As first enacted, § 1396p(c)(1)(F) allowed the State to recover only "the total amount of medical assistance paid on behalf of *the annuitant*." Pub. L. No. 109-171, 120 Stat. 4, 63 (2006) (emphasis added). That amount is typically zero for married couples, because a healthy spouse will take out an annuity in her own name so that the income is not attributed to the institutionalized spouse. Just ten months later, as a result, Congress retroactively amended the provision to change "the annuitant" to "the institutionalized individual." Pub. L. No. 109-432, 120 Stat. 2922, 2998 (2006).

In March 2007, four months *after* this amendment *fixed* the drafting problem, the Kentucky Department of Medicaid Services promulgated an annuity regulation that reflected the pre-amendment version of § 1396p(c)(1)(F). 907 Ky. Admin. Regs. 1:650 § 2(8)(b)(1) (2007). That regulation sat on the books for over seven years until the Department finally replaced "annuitant" with "institutionalized individual" in April 2014. 907 Ky. Admin. Regs. 20:030 § 1(9)(d)(1) (2014). The Department, however, never enforced the regulation as written. In her capacity as the Branch Manager for Eligibility Policy of the Department, Carmicle took the position that the state agency would strip eligibility only if the couple took out an annuity that did not comply with the federal rule.

In September 2009, Mary and Claude Singleton sought Medicaid benefits to support Claude's full-time residence in a nursing home. They engaged an elder care law firm to advise them on purchasing an annuity in order to gain eligibility. Mary allegedly wanted to name the State as a beneficiary for the value of care provided to *her*, rather than Claude, as the Kentucky

regulation seemed to permit. But Mary's lawyers informed her that the Department was enforcing the federal annuity rule, prompting her to purchase a $220,000 annuity that complied with the federal requirement. (The Singletons do not claim that Mary relied on the text of the Kentucky regulation to her detriment.)

Claude obtained Medicaid eligibility after the purchase of the annuity, and the Department paid $98,729.01 in medical expenses on his behalf before his death. Mary passed away in February 2014, leaving $118,238.41 in the annuity. Because the annuity was structured in accordance with the federal rule, the Department was entitled to reclaim the full amount it paid for Claude's care, with $19,509.40 left over for the secondary beneficiaries.

The Singleton children, acting as co-administrators of their mother's estate, filed a § 1983 action against the Secretary of the Kentucky Cabinet of Health and Human Services, seeking an injunction and a declaratory judgment that the State has no right to the funds remaining in the annuity and that the funds remain the property of the Singletons. They also filed a damages action under § 1983 and state law against Carmicle, whom they accuse of adopting an annuity policy that violates Kentucky and federal law. Carmicle filed a motion to dismiss the complaint under Civil Rule 12(b)(6), claiming that the Kentucky annuity regulation was void and that the claim against her should be dismissed on the basis of qualified immunity. The district court determined that qualified immunity should be addressed at summary judgment after both parties had an opportunity for discovery. In response, Carmicle, but not the state agency, filed this interlocutory appeal.

The crux of the Singletons' case is that Carmicle illegally ignored the Kentucky annuity regulation, wrongfully depriving Mary's estate of $98,729.01. But Carmicle complied with the law, the federal law that is. Federal law preempted the state regulation by requiring all state plans to treat annuities in accordance with § 1396p(c)(1)(F), eliminating any viable claim against Carmicle, whether under federal or state law.

The Medicaid statute says that "[a] State plan for medical assistance *must . . .* comply with the provisions of section 1396p of this title with respect to . . . transfers of assets . . . ." 42 U.S.C. § 1396a(a), (a)(18) (emphasis added). Section 1396p(c)(1)(A) says that "the State

plan *must* provide that if an institutionalized individual or the spouse of such an individual . . . disposes of assets for less than fair market value on or after the look-back date . . . the individual is ineligible for medical assistance for [custodial care]" for a period proportionate to the size of the transfer. (Emphasis added). And when Mary Singleton purchased her annuity in September 2009, § 1396p(c)(1)(F) stated that "the purchase of an annuity *shall* be treated as the disposal of an asset for less than fair market value unless [] the State is named as the remainder beneficiary . . . for at least the total amount of medical assistance paid on behalf of the *institutionalized individual*." (Emphasis added); *see Hughes*, 734 F.3d at 476; *see also Ark. Dep't. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 283 (2006).

These provisions left Carmicle no discretion to treat annuities differently under state law. Once it becomes clear that federal law controls the point, all of the Singletons' claims—whether that the State improperly seized their money under the Fourth Amendment, took it without compensation under the Fifth Amendment, or deprived them of property under the Fourteenth Amendment—evaporate.

The Singletons respond that the Medicaid statute gave the Commonwealth the discretion to be more generous in its treatment of annuities and the general spend-down rules. In support, they point to § 1396a(r)(2)(A), which provides that the "methodology to be employed in determining income and resource eligibility . . . may be less restrictive [than the eligibility rules for Social Security]," and which (in their view) gave Kentucky license to craft its own, more generous annuity rules. But this general grant of discretion permits States only to adopt "less restrictive" methodologies that make "additional individuals . . . eligible for medical assistance" and ensure that "no individuals who are otherwise eligible are made ineligible for such assistance." 42 U.S.C. § 1396a(r)(2). The regulation at issue here did not serve to extend care to more individuals. Rather, it required Medicaid claimants to set up the beneficiary provisions of their annuities in one manner rather than another. And the beneficiary provision the State required ran contrary to the Medicaid Act's highly reticulated provisions requiring participating States to treat annuities in a particular way, which were intended to close the loophole that the State re-opened.

"[W]here state and federal law directly conflict, state law must give way." *Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1398 (2013) (quotation omitted). The Kentucky annuity regulation departed from the Medicaid statute's clear instructions. To respect the federal law requires preemption of the state regulation. Carmicle thus was correct that federal law required her to impose a look-back penalty on couples who structured their annuities to avoid paying the State back for the cost of care.

Because the state regulation was void and because Carmicle's policy was compelled by federal law, she did not violate any of the Singletons' rights. The state regulation did not create a property interest that was taken in violation of the Fourth, Fifth, or Fourteenth Amendments, and there was no violation of the federal or state Medicaid statutes. Even if all of the factual allegations in the Singletons' complaint are accurate, they accordingly are not entitled to any relief against Carmicle, and their claims against her must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

It is true, as the district court correctly pointed out, that it is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds given the fact development often needed to decide whether the state official violated clearly established federal law. *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 234–35 (6th Cir. 2005) (Sutton, J., concurring); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring). But in this instance our decision has less to do with traditional qualified immunity disputes—especially the clearly established prong of the qualified immunity inquiry—and more to do with the Supremacy Clause. Because federal law preempted the Kentucky annuity regulation, the Singletons' complaint does not identify any cognizable legal violation by Carmicle, much less a violation of a clearly established federal right of which a reasonable person should have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

For these reasons, we reverse and remand to the district court for proceedings consistent with this opinion.