NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0048n.06

No. 21-1689

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SHALIMAR HOWARD,

  Plaintiff-Appellee,

v.

LIVINGSTON COUNTY, MICHIGAN, et al.,

  Defendants,

WILLIAM J. VAILLIENCOURT; MIKE TAYLOR,

  Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 20, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

---

**Before: STRANCH, DONALD, and THAPAR, Circuit Judges.**

  STRANCH, J., delivered the opinion of the court in which DONALD, J., joined in full, and THAPAR, J., joined in part. THAPAR, J. (pp. 32–36), delivered a separate opinion concurring in part and dissenting in part.

  JANE B. STRANCH, Circuit Judge. Shalimar Howard, a probation officer employed by the Michigan Department of Corrections, brought federal claims under 42 U.S.C. § 1983 and one state law claim, against state officials and entities, including William Vailliencourt and Mike Taylor, prosecutors for Livingston County, Michigan.[1] Howard alleges that the prosecutors did not approve of her public criticism of their handling of probation cases and took retaliatory action

---

[1] Defendants below, Livingston County and Craig Carberry, a Michigan state police investigator, are not parties to this appeal.

against her, including unwarranted investigations and criminal prosecution, in an effort to have her removed from her position. Vailliencourt and Taylor moved for dismissal, claiming absolute prosecutorial, sovereign, or qualified immunity, as well as governmental immunity to the state law claim. The district court denied their motion, and this interlocutory appeal followed. We hold that Howard has adequately pled claims for: violation of her First Amendment rights; federal civil conspiracy related to that violation; and a state law claim of tortious interference with business relationship. As to Howard's claims for the violation of her Fourteenth Amendment substantive due process rights and conspiracy to violate those due process rights, we grant qualified immunity to the Defendants.

We therefore **AFFIRM IN PART** and **REVERSE IN PART** the denial of the motion to dismiss.

## I.  FACTS AND PROCEDURAL HISTORY

Because this case arises from a motion to dismiss, the facts are drawn from the Complaint. Shalimar Howard became a probation officer for the Michigan Department of Corrections (MDOC) in 2002 and, beginning in 2010, she was assigned to the Department of Corrections Livingston County Probation Office. In 2017, Vailliencourt was elected prosecutor for Livingston County, Michigan; Taylor served as an assistant prosecutor.

Howard's allegations include the following. MDOC maintained a policy of "collaborative case management" that allowed probation officers "vast discretion" on how to handle probation violations and whether to seek formal charges based on violations. Vailliencourt and Taylor frequently sought to override probation officers' charging decisions in violation of MDOC's case management policy. Howard observed, and eventually spoke out about, the prosecutors' "discriminatory and/or arbitrary" "misuse" of their charging discretion, selectively choosing to

pursue charges against certain classes of probation offenders and not others. As "a direct consequence" of her public opposition, Vailliencourt and Taylor developed "animosity" toward her, criticized her, and expressed their dissatisfaction with her for following MDOC's collaborative case management policy instead of conforming to their discriminatory practices.

On March 23, 2017, Howard was called as a witness to testify in a domestic civil matter in Livingston County concerning one of her probation clients. She states that she gave truthful testimony despite being interrupted by the judge, who refused to allow her to explain her testimony. After the March hearing, Vailliencourt and Taylor undertook "a secretive investigation" by reviewing a video recording of the hearing, ordering a transcript, and obtaining Howard's notes from the probationer's MDOC file. Howard was then intentionally excluded from participating in a June 2017 hearing concerning the same probationer, and, without grounds to do so, Vailliencourt requested that the Michigan state police investigate whether Howard committed perjury during the March 23 hearing.

On August 18, 2017, Vailliencourt sent a letter to Howard's supervisor "falsely" accusing her of committing perjury at the March 23 hearing in an effort to "undermine [her] credibility with her employer," and to silence her opposition to Defendants' discriminatory treatment of probationers. The letter stated that (1) Howard would not be called by the Livingston County prosecutors to testify in any proceedings, (2) the prosecutor's office would not respond to any request by Howard to pursue charges against any probationer, and (3) Howard was banned from entering the Livingston County prosecutor's office.

MDOC internal affairs division investigated the perjury allegations, including by taking a statement from Howard, and determined she had done nothing improper. She was not disciplined in any way. Despite knowing that MDOC found she did nothing wrong, Vailliencourt and Taylor

continued to "actively participate" in further investigations regarding their accusation of perjury by Howard.

On January 12, 2018, Vailliencourt and Taylor charged Howard with three counts of perjury, knowing that the charges were without probable cause. The charges were based on a "sham" investigation conducted by Craig Carberry, an investigator with the Michigan state police, that "only repeat[ed]" the cursory inquiries Vailliencourt and Taylor had previously made, and which did not produce any evidence that Howard had committed perjury. Howard alleges that a warrant was prepared and submitted by Carberry, Vailliencourt, and Taylor without probable cause. Howard was arraigned that same day, and based on the perjury charges, she was suspended without pay from her position at MDOC. A preliminary examination was held in May 2019, at which Vailliencourt and Taylor voluntarily dropped one of the perjury charges against Howard. On August 2, 2019, the trial court granted Howard's motion to dismiss and quash the two remaining perjury charges due to lack of probable cause.

Howard filed a § 1983 complaint against Vailliencourt and Taylor in their individual and official capacities claiming (1) false arrest and detention without probable cause in violation of the Fourth Amendment (Count I); (2) First Amendment retaliation arising from the prosecutors' conduct in response to her protected speech about their discriminatory practices (Count II); (3) violation of her substantive due process rights under the Fourteenth Amendment for pursuing an unwarranted criminal prosecution that tarnished plaintiff's reputation (Count III); (4) civil conspiracy by Vailliencourt and Taylor to pursue an unfounded prosecution despite knowing that

No. 21-1689, *Howard v. Livingston Cnty., et al.*

there was no evidence plaintiff had committed a crime (Count IV). She also asserted a state law claim for tortious interference with business relationship (Count VI).[2]

Vailliencourt and Taylor filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint is barred by various immunity doctrines and is factually deficient. The district court denied their motion to dismiss as to Howard's First and Fourteenth Amendment claims, as well as a civil conspiracy and state law claims. The district court granted Defendants' motion to dismiss as to Howard's Fourth Amendment claim based on false arrest, because it found that filing charges is a "core function" of preparing and presenting a case for prosecution, and it is therefore barred by prosecutorial immunity.[3] *Howard v. Livingston Cnty.*, No. 20-11236, 2021 WL 4458542 (E.D. Mich. Sept. 29, 2021). This appeal followed.

## II. JURISDICTION

Appeals courts generally lack jurisdiction over a district court's decision not to dismiss a suit for failure to state a claim. But a public official may be shielded from certain lawsuits based on an assertion of immunity, and a district court's denial of that motion is an immediately appealable collateral order. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982); *Cullinan v. Abramson*, 128 F.3d 301, 307 (6th Cir. 1997). Because Vailliencourt and Taylor raise a number of defenses based on immunity, the denial of their motion to dismiss was immediately appealable.

---

[2] Howard also brought a *Monell* claim against Livingston County for failure to train and discipline its employees, and for failure to enforce policies against making improper charging decisions (Count V). That claim is not at issue in this appeal.

[3] Howard did not cross appeal dismissal of the Fourth Amendment claim.

## III.  STANDARD OF REVIEW

We review a district court's decision under Federal Rule of Civil Procedure 12(b)(6) de novo.  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  We take a plaintiff's well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in her favor.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  To survive a motion to dismiss, Howard must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009).

## IV.  DISCUSSION

Howard's federal claims allege violations of her First and Fourteenth Amendment rights pursuant to 42 U. S. C. § 1983, which states, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under § 1983, a plaintiff must allege violation of a right secured by the United States Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U. S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U. S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state

law." *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). As prosecutors serving pursuant to Michigan law, Vailliencourt and Taylor are state actors.

Vailliencourt and Taylor contend that all of Howard's claims are barred by one or more immunity doctrines. Specifically, they argue that (1) their individual conduct is protected by absolute prosecutorial immunity; (2) their official conduct is protected by sovereign immunity because they are agents of the State of Michigan when performing their prosecutorial duties; (3) they are entitled to qualified immunity; and (4) they are protected by governmental immunity under Michigan law as to Howard's state law claim of tortious interference for acts performed within the scope of their official duties. We address each immunity claim below.

## A. Absolute Prosecutorial Immunity

Vailliencourt and Taylor begin by claiming that all actions taken while holding their prosecutorial positions are completely immune from suit based on prosecutorial immunity. The Supreme Court, however, has repeatedly endorsed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). This approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Under the functional approach, "the official seeking absolute immunity bears the burden of showing that [absolute] immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Courts have been "quite sparing" in extending this immunity to state actors in the § 1983 context. *Buckley*, 509 U.S. at 269 (quoting *Forrester*, 484 U.S. at 224). A prosecutor is entitled to absolute immunity only when that prosecutor acts "as an advocate for the State" and engages in activity that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Thus, a prosecutor is absolutely immune from liability for "initiating a

prosecution" and "presenting the State's case." *Id.* at 431. The Supreme Court has explained that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. For example, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is not entitled to absolute immunity because that immunity does not protect "the investigative functions normally performed by a detective or police officer." *Id.*

The Supreme Court has made clear that the applicability of prosecutorial immunity depends on whether the conduct at issue is intimately connected to the judicial process, though the line between conduct that is part of a preliminary investigation and conduct that is "intimately associated with the judicial phase of a criminal proceeding" may be difficult to draw. *See, e.g., Burns*, 500 U.S. at 495 ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive."). Nevertheless, the approach endorsed by the Supreme Court in *Burns* and *Buckley*, and repeatedly applied by our court, focuses on the specific conduct at issue and requires us to determine whether a prosecutor was acting as an advocate for the state, or was simply engaging in preparatory conduct and performing administrative or investigative functions. *See, e.g., Stockdale v. Helper*, 979 F.3d 498, 302-06 (6th Cir. 2020) (no absolute immunity for personnel action taken by prosecutor); *Rieves v. Town of Smyrna*, 959 F.3d 678, 690-92 (6th Cir. 2020) (no absolute immunity for conduct prior to initiation of judicial proceedings).

At issue, then, is whether Vailliencourt and Taylor engaged in preliminary conduct that is administrative or investigative in nature rather than conduct that is "intimately associated" with the judicial phase of a criminal proceeding. The district court held that Defendants were not entitled to absolute prosecutorial immunity on Howard's claims, explaining:

> [T]he complaint alleges that defendants Vailliencourt and Taylor engaged in their own plenary investigation of suspected misconduct by the plaintiff, which included searching for clues and obtaining evidence, in an attempt to assemble probable cause—which, allegedly, ultimately was entirely unproductive. Nevertheless, despite finding no evidence of a crime, Vailliencourt then sent a letter to the plaintiff's supervisor accusing her of perjury. The sending of that accusatory letter—allegedly months before any formal charges were filed—has no apparent relationship with the judicial phase of any particular criminal proceeding. Those investigative and inquisitorial activities in which the defendants engaged strayed far beyond the core functions of preparing and presenting the case in a regular criminal prosecution, and the defendants therefore are entitled to immunity for them, if at all, on a qualified basis only.

*Howard*, 2021 WL 4456542, at *8.

The Complaint alleges that after Howard attended a March 17, 2017 hearing regarding her probationer, she was prevented from attending the June hearing by Defendants. Vailliencourt and Taylor then initiated their own "secretive investigation" of Howard in an attempt to *find* probable cause to charge her with perjury and, when that was not fruitful, sought to have the police investigate her. Howard alleges that Defendants assumed the role of investigators and obstructed her performance of her job duties, including by sending a letter on August 18 to her employer falsely accusing her of perjury, and continued their investigation knowing that MDOC Internal Affairs "findings did not support any wrongdoings by Howard."

Analyzed through the functional approach, Defendants were engaged in independent acts to gather evidence to support a charge, not actions connected to any active criminal prosecution or determination of witness credibility. Searching for some type of wrongdoing and then sending a

letter to Howard's employer, all allegedly without some evidence or probable cause, is not conduct "intimately associated" with a criminal proceeding and is not entitled to the protection of absolute prosecutorial immunity.

On appeal, Vailliencourt and Taylor argue that their conduct was necessary to the "core" prosecutorial function of determining Howard's credibility as a witness, relying on *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). We first note that Defendants did not explicitly raise this argument below, and neither their motion to dismiss nor the district court's opinion cited to *Brady* or *Giglio*. In any event, the argument is unavailing because Defendants' actions were not "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Defendants conducted their own "investigation" of Howard and sent the August 18 letter to her employer accusing her of perjury five months before instituting any criminal charges against her.

Defendants also argue that Howard's complaint is deficient because she does not specify dates for some of the alleged improper conduct. Timing is a "relevant, but not necessarily determinative" factor in deciding if the character of an action is quasi-judicial advocacy or police-type investigative work. *Genzler v. Longanbach*, 410 F.3d 630 (9th Cir. 2005). Howard's Complaint provides key dates showing that the allegations of wrongdoing supporting her claims began in March 2017, included the letter to her employer of August 18, 2017, and, despite the subsequent finding of no wrongdoing by MDOC Internal Affairs, continued; all such activities occurred well before Defendants charged her with perjury and had her arrested in January 2018. In *Buckley*, the Supreme Court stated that absolute immunity does not attach before probable cause to arrest exists, and even after probable cause is established, absolute immunity may not apply to primarily administrative or investigative activity. *See, e.g., Buckley*, 509 U.S. at 274 ("A

prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."); *Ireland v. Tunis*, 113 F.3d 1435, 1447 n.7 (6th Cir. 1997) ("Conducting a preliminary investigation is generally removed from a prosecutor's role in a judicial proceeding; 'such investigations take place outside the adversarial arena with its attendant safeguards that provide real and immediate checks to abusive practices.'") (quoting *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988)).

At this early stage of the proceedings, the timeline is adequate. While immunity protects prosecutors when they act as advocates, Vailliencourt and Taylor have not demonstrated that absolute immunity protects their alleged conduct prior to Howard's arrest. Defendants failed to meet their burden to show that the alleged investigation was intimately associated with the judicial phase of the criminal process. The district court, therefore, properly refused to dismiss the claims in the Complaint concerning Howard's First Amendment retaliation and Fourteenth Amendment substantive due process claims on absolute immunity grounds.

### B. Sovereign Immunity

Howard also brought claims against Vailliencourt and Taylor in their official capacities in Counts II, III, VI, and Defendants contend that sovereign immunity bars those claims. The Eleventh Amendment to the United States Constitution bars § 1983 claims against state officials sued in their official capacities for damages. A suit against a state official in his or her official capacity amounts to a suit against the state for purposes of determining the question of immunity under the Eleventh Amendment. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). In Michigan, when a county prosecutor brings formal charges in the name of the People of the State of Michigan, he acts as "an agent of the state rather than" of his county. *Gavitt v. Ionia Cnty.*, 67 F. Supp. 3d 838 (E.D. Mich. 2014) *aff'd sub nom. Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2018).

For essentially the same reasons we reject Defendants' claim of prosecutorial immunity, Defendants fail to demonstrate that sovereign immunity shields them from liability. Sovereign immunity does not apply to Defendants' conduct involving the investigation and letter to Howard's employer. No connection exists between those actions and the Defendants' state-delegated duty to prosecute state criminal offenses. The investigation and accusatory letter to MDOC occurred before any formal charges were filed and are too far removed from the judicial process surrounding a formal criminal prosecution brought by the State. Sovereign immunity was properly denied.

## C. **Qualified Immunity**

When absolute immunity is not applicable, qualified immunity may protect government officials in the exercise of their duties. *Burns*, 500 U.S. at 486-87. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). It extends to governmental officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A qualified immunity analysis requires a two-pronged inquiry. The first prong addresses whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendants'] conduct violated a constitutional right." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001)). The second prong asks whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Saucier*, 533 U.S. at 201–02). The court may use its discretion to determine which prong to analyze first. *Pearson,* 555 U.S. at 236. Ultimately, "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity."

*Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).  In reading a complaint in the light most favorable to the plaintiff, as we must, it need only be "plausible" that an official's acts violated the plaintiff's clearly established constitutional right.  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Defendants claim qualified immunity from liability for Howard's First Amendment retaliation, Fourteenth Amendment substantive due process, and civil conspiracy claims.  We have repeatedly cautioned, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.  Although [a government official's] 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12."  *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). "[I]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds" because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law. *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016).

Defendants contend that they are entitled to qualified immunity both because Howard has failed to plead a violation of any constitutional right and because the rights she alleges are not clearly established.  We begin analysis with the constitutional rights alleged and address the two components of qualified immunity for each claimed right separately.

## 1. First Amendment Retaliation

### a. *Violation of a Constitutional Right*

The elements of a First Amendment retaliation claim by a public employee are: (1) plaintiff must "engage[] in protected conduct;" (2) defendant must take "an adverse action [or deprive plaintiff of some benefit] that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct;'" and (3) "the adverse action" must be "motivated at least in part by the [plaintiff's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Defendants argue that Howard has failed to make out a prima facie case under the First Amendment because she did not allege that she was engaged in protected speech. That is incorrect. Howard specifically alleged that she "verbally and publicly expressed her opposition to the discriminatory practices" of Vailliencourt and Taylor. For First Amendment protection, the constitutional rights of public employees like Howard are addressed in a test that balances the interests of the employee and the government. *Lane v. Franks*, 573 U.S. 228, 237 (2014). Under *Lane*, we must determine whether the employee spoke as a citizen on a matter of public concern, and, if so, whether the relevant government entity had an adequate justification for treating the employee differently than other members of the general public. Defendants did not argue below but raised on appeal the claim that Howard failed to allege a public employee free speech claim. Putting aside the issue of Defendants' waiver, Howard's allegations, including that she "publicly voiced her concerns" about a matter of public concern (discrimination), are sufficient to demonstrate protected speech. *Connick v. Myers*, 461 U.S. 138, 148 (1983) (Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech that addresses a matter

of public concern, as is speech that "seek[s] to inform the public that [the government] [is] not discharging its governmental responsibilities.").

Under *Lane*, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties," regardless of whether the speech "relates to public employment or concerns information learned in the course of public employment." 573 U.S. at 240. We look to the "content and context" of a plaintiff's speech to determine whether statements were made pursuant to her professional duties. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012). Relevant considerations include the speech's impetus, setting, audience, and subject matter, as well as whether the statements were made only to individuals "up the chain of command." *Id.* (quoting *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.,* 605 F.3d 345, 348 (6th Cir. 2010)).

Howard alleges that MDOC probation officers are governed by MDOC's "collaborative case management policy," under which probation officers decide how to handle noncompliant probationers, including by deciding whether to charge a probationer with a crime for noncompliance. Howard alleges that Defendants acted in opposition to that MDOC policy by misusing their discretion to charge and investigate probationers in a discriminatory manner, and that she spoke out in opposition to this practice.

Howard's job duties as an MDOC probation officer did not include any responsibility to address the job performance of the prosecutors on her cases: No allegation suggests that she had any job duty to "investigate [] alleged misconduct" by prosecutors or to give her opinion on any misconduct. *Handy-Clay*, 695 F.3d at 542. Howard also alleges that she voiced her concerns "verbally and publicly," and in such a manner that Defendants, who were not her supervisors, became aware of her comments. Drawing reasonable inferences in Howard's favor, this indicates

that she spoke to a broader audience than her immediate supervisor—distinguishing her case from those in which public employees act pursuant to their job duties by raising complaints or concerns up a chain of command. *Fox*, 605 F.3d at 350. Here, Howard did not speak to fulfill a job duty when she publicly opposed Defendants' allegedly discriminatory treatment of probationers. *See Lane*, 573 U.S. at 240.

An employee's comments suggesting possible violations of the law are "undoubtedly of the highest public concern, since they hint at possible wrongdoing by public officials." *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000); *Whitney v. City of Milan*, 677 F.3d 292, 297 (6th Cir. 2012) (concluding that allegations of public corruption and discrimination are "inherently matters of public concern."). At this stage of the litigation, Howard's allegations concerning her public opposition to discriminatory actions by prosecutors in Count II, are sufficient to raise a plausible claim of protected conduct, and Defendants have not asserted an adequate justification for treating Howard differently than any other member of the public. *Lane*, 573 U.S. at 242 (citing *Garcetti*, 547 U.S. 410, 418 (2006)).

The second prong of a First Amendment retaliation claim by a public employee entails an adverse action capable of deterring the exercise of protected conduct. Howard alleges that Defendants engaged in numerous adverse actions including undertaking a secret investigation of her; keeping her from attending the June 2017 hearing of her probation client; and sending a letter two months later to her employer accusing her of perjury and barring her from entering Livingston County courtrooms or the prosecutor's office. Federal courts have found that bans from certain public spaces are adverse actions that would deter a person of ordinary firmness from engaging in protected conduct. *See Seum v. Osborne*, 348 F. Supp. 3d 616, 623, 632 (E.D. Ky. 2018) (finding that a ban "from the third floor of the Capitol Annex" would chill the First Amendment expression

of an ordinary person, including the plaintiff who was a "citizen advocate"); *Stark v. City of Memphis*, No. 19-2396, 2020 WL 8770177, at \*16 (W.D. Tenn. Feb. 18, 2020) *report and recommendation adopted*, No. 2:19-2396, 2021 WL 597880 (W.D. Tenn. Feb. 16, 2021) ("[A] ban from police property is a serious sanction for a prosecutor—especially a prosecutor who, like [the plaintiff], had an office in a police building."). Here, Howard's position as a probation officer entailed work-related duties requiring access to the Livingston County courts and prosecutor's office. Defendants' actions as alleged satisfy the adverse action requirement.

Defendants next argue that Howard's retaliation claim should be dismissed because she has failed to allege that Defendants' actions against her "would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. One clear "adverse action" is Howard's suspension without pay in January 2018, but that suspension occurred after her arrest, not when her employer received the letter from Vailliencourt in August 2017. Howard, however, also claims that Defendants "tarnished her reputation" and that Defendants' conduct was "designed to silence her." These allegations satisfy our precedent holding that adverse action "may include harassment or publicizing facts damaging to a person's reputation." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).

Defendants also contend that because they are not her employer, they cannot take adverse action against her. That view of what can constitute "adverse action" is too narrow. Howard alleges that Defendants undertook a criminal investigation of her without any evidence of wrongdoing and continued their probe even after her own employer investigated and found no wrongdoing. Having to endure a criminal investigation is an adverse consequence that would deter individuals from exercising their First Amendment rights. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (noting that a threatened governmental investigation would deter an

ordinary person from engaging in protected conduct) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011)).

Although MDOC cleared Howard of any wrongdoing after the letter was sent in August 2017 but before she was arrested and suspended without pay in January 2018, the degree and duration of the impact on her job are matters for discovery. At this stage of the proceedings, the allegations of Defendants' efforts to get Howard fired and obstruct her ability to perform her job are sufficient to state a claim for First Amendment retaliation.

Defendants next argue that Howard cannot satisfy the third prong of the public employee test—retaliatory motive—because she does not allege specifically when she spoke out, about what, or to whom. The Complaint indicates that Howard's protected speech occurred prior to March 17, 2017, the date of the probation hearing in which she participated and which Defendants employed to initiate an investigation of her. Howard alleges she was subsequently prohibited from attending a June 2017 hearing concerning the same probation client, followed two months later by the letter to her supervisor accusing her of perjury and barring her from public buildings. These allegations of a sequence of ongoing and escalating action by Defendants support an inference of retaliatory motive. *See Paterek v. Vill. of Armada*, 801 F.3d 630, 647 (6th Cir. 2015) (Causation prong satisfied where recurring speech activities caused "escalating animus" that led defendants to take adverse actions years after the initial speech).

The facts in the Complaint as noted above show a causal connection between Howard's protected conduct and Defendants' retaliatory investigation and actions, including temporal proximity between Howard's protected speech and Defendants' retaliatory conduct in investigating her and sending a letter to her employer. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (per curiam) ("In theory, temporal proximity between the protected

conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive.") (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)).

Analyzing qualified immunity at this early Rule 12(b)(6) stage, we conclude that Howard has satisfied the three-part test of *Thaddeus–X*, 175 F.3d at 394, and has adequately alleged a claim of retaliation for the exercise of her First Amendment rights as a public employee.

b. *Clearly Established Law*

The second prong of the qualified immunity analysis addresses whether at the time of the action a reasonable official would have understood that his conduct violated a clearly established right. *Saucier*, 533 U.S. at 201. A right is clearly established when "it would be clear to a reasonable [official] that his conduct was unlawful in the situation that he confronted." *Saucier*, 533 U.S. at 202; *accord Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997) (noting that "[a]ll public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern"); *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) (noting that "[t]he law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and 'retaliation claims' have been asserted in various factual scenarios").

In articulating the meaning of "clearly established," we have explained that: "It is not necessary, however, for the exact factual situation to have previously been declared unlawful, so long as Defendants have 'fair warning.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)). The question is whether Defendants had "fair warning" that the actions they took against Howard were unlawful under the First Amendment or whether the purported unlawfulness of their actions was "apparent" at the time they took them. *Pelzer*, 536 U.S. at 739. Even before Howard's arrest and suspension in

January 2018, Defendants knew or should have known that prohibiting Howard from participating in Livingston County probation cases and from entering the prosecutor's office, as she alleges, would significantly hinder her ability to do her job. That her job might be put in jeopardy and that she might be fired was the point of the August 2017 letter to Howard's supervisor.

The gravamen of Howard's allegation is that, in retaliation for speaking publicly on a matter of public concern, Defendants set out on an intentional and ultimately successful campaign to have her suspended from her job with MDOC. Howard's comments suggesting "possible wrongdoing by public officials," are protected speech that is "undoubtedly of the highest public concern" under Sixth Circuit precedent. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). Defendants sent a letter with false accusations that constituted "harassment" and "publicizing facts damaging to [Howard's] reputation"—conduct that is "adverse action." *Fritz*, 592 F.3d at 724 . And Howard's allegations of a sequence of ongoing and escalating action by Defendants support an inference of retaliatory motive. *Arnett*, 281 F.2d at 560-61; *Coleman*, 474 F. App'x at 437. This Circuit's well-settled law establishes the unconstitutionality of this type of retaliation under color of law for the exercise of First Amendment rights.

Defendants instead posit that the law is not clearly established, arguing that our First Amendment retaliation cases involve adverse employment action by the plaintiff's employer—not a third party like Defendants. *See Stockdale*, 979 F.3d at 506-07 (granting qualified immunity to prosecutor after denying absolute immunity). But *Stockdale* does not alter our analysis. The crux of *Stockdale* is whether defendant's emails to the city manager about hiring a new police chief were within her prosecutorial duties. The district court denied both absolute and qualified immunity, but we reversed the denial of qualified immunity on the ground that the law was not clearly established. *Id.* at 507. *Stockdale* is primarily distinguishable because it was decided on a

complete factual record at summary judgment, not on a motion to dismiss. We disfavor adjudication of qualified immunity at the motion to dismiss stage because development of the factual record is frequently necessary to decide whether an official's actions violated clearly established law. *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020). And *Stockdale* is factually distinct because there we expressly stated that "[b]ecause a reasonable prosecutor would have found the absolute immunity question a close one in this context, that strongly suggests that qualified immunity applies." *Stockdale*, 979 F.3d at 507-508. Here, accepting Howard's allegations as true under the motion to dismiss standard, the absolute immunity question is not close. *See infra* at 7-11.

Viewing the facts in the light most favorable to Howard, her speech raised actual or potential wrongdoing, and Defendants had "fair warning" as of March 17, 2017, the date on which they allegedly began their retaliatory conduct against Howard, that her public speech about a matter of public concern constitutes protected First Amendment activity. Howard's allegations of First Amendment retaliation in this case are sufficient to withstand 12(b)(6) dismissal. We affirm the district court's refusal to grant qualified immunity on this claim to Defendants at this stage in the litigation.

## 2. Fourteenth Amendment Substantive Due Process

### a. *Violation of a Constitutional Right*

We first address whether Howard has sufficiently alleged a substantive due process violation. The Fourteenth Amendment's Due Process Clause forbids the State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Clause has both a procedural and a substantive component. *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Both act as a check on the power of the government against its citizens, but

substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, barring certain government actions "regardless of the fairness of the procedures used to implement them." *Daniels*, 474 U.S. at 331; *accord Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Substantive due process prohibits the government from infringing on certain "fundamental rights" without adequate justification. *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988)).

To state a cognizable substantive due process claim, the plaintiff must allege "that an individual has been deprived of a particular constitutional guarantee, or [] that the government has acted in a way that 'shock[s] the conscience.'" *Handy-Clay*, 695 F.3d at 547 (citing *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)); *see also Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (plaintiff may establish a substantive due process claim by alleging "'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature") (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

Howard alleges that Defendants deprived her of her liberty interest in her "good name" and that her "good character has been maligned" by their actions. She further alleges deprivation by Defendants of her "liberty interest in [her] good name, reputation, integrity, honor, and her opportunity to take advantage of future employment opportunities, as well as her liberty interest in bodily security and integrity." The focus of the complaint is on Howard's interest in preserving her reputation, which impacts her ability to obtain future employment.

While Howard's suspension without pay and possible impairment of future employment opportunities standing alone are not generally fundamental interests that substantive due process

protects, *see, e.g., Hange v. City of Mansfield,* 257 F. App'x 887, 896 (6th Cir. 2007), her substantive due process claim may survive a motion to dismiss if she plausibly alleges conscience-shocking conduct, *Handy-Clay*, 695 F.3d at 547. "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty.*, 34 F.3d 345, 351 (6th Cir. 1994)). Of note, Justice Souter's concurrence in *Albright v. Oliver*, 510 U.S. 266, 291 (1994) suggests that initiating an unwarranted prosecution that is dismissed before trial may in some circumstances result in a substantive due process violation:

> There may indeed be exceptional cases where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure. Whether any such unusual case may reveal a substantial deprivation of liberty . . . are issues to be faced only when they arise."

*Id.* (Souter, J. concurring); *see also Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (noting that "§ 1983 malicious prosecution claims may still be available pursuant to the Fourteenth Amendment's substantive due process rights" in cases that do not involve a Fourth Amendment seizure).

We have "recognize[d] the difficulty of determining where conscience-shocking behavior resides on the continuum of actions." *Range*, 763 F.3d at 590. "Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is 'intended to injure' without any justifiable government interest, most clearly rises to the 'conscience-shocking' level." *Id.* (quoting *Lewis*, 523 U.S. at 848-49). "Conduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a 'matter for closer calls.'" *Id.* (quoting *Lewis*, 523 U.S. at 849). The determination of whether

conduct shocks the conscience "depends upon the facts and circumstances of the individual case." *See Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002).

Howard alleges that, because she spoke out against Defendants on a matter of public concern, they subjected her to retaliation, unfounded investigation, and, ultimately, criminal prosecution that caused her to be suspended without pay. She also alleges that the conduct by the prosecutors was intentional. While conscience-shocking conduct may be a "closer call" where gross negligence or reckless is alleged, the prohibition on the intentional, malicious use of governmental power is well established. *Range*, 763 F.3d at 590; accord *Daniels*, 474 U.S. at 331; *Sutton,* 958 F.2d at 1350. *See Lewis*, 523 U.S. at 848 ("[T]he constitutional concept of conscience shocking . . . points clearly away from liability, *or clearly toward it*, only at the ends of the tort law's spectrum of culpability.") (emphasis added)). Even more egregiously, Defendants intentionally violated Howard's constitutional rights despite having ample time to reflect on their course of action. Where "extended opportunities to do better are teamed with protracted failure even to care," even indifference can be "truly shocking." *Lewis*, 523 U.S. at 853. Here, a protracted opportunity to reflect and do better is teamed with Defendants' sustained malicious intent. Defendants' prolonged, intentional conduct alleged by Howard is adequate to fall within the category of conscience shocking.

Because the parties have not engaged in discovery, we cannot at this stage make the necessary fact-specific determination of whether the alleged conduct shocks the conscience on a fully developed record. Instead, we must take as true Howard's allegations of intentional wrongdoing. The allegations of Defendants' wrongdoing—baseless criminal prosecution of a colleague by prosecutors imbued with the public's trust—are egregious and shock the conscience. Howard's complaint therefore adequately alleges a substantive due process violation.

b. *Clearly Established Law*

Under the second prong of the qualified immunity analysis, we must determine whether a reasonable official would, at the time the act was committed, understand that his conduct violated a clearly established right. *Saucier*, 533 U.S. at 201. The "clearly established" inquiry requires that we determine whether the substantive due process right alleged was clearly established at the time of the violation. The Supreme Court has held that where an enumerated constitutional Amendment "provides an explicit textual source of constitutional protection" against government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thaddeus-X*, 175 F.3d at 387. We turn to governing precedent to determine the source of constitutional protection against Defendants' conduct as alleged by Howard.

First, because Howard's allegations relate to Defendants' investigation and prosecution—not her subsequent arrest—it appears that this is the type of rare case that Justice Souter referenced in *Albright* in which a "quantum of harm occurs in the interim period" before a Fourth amendment seizure. *Albright*, 510 U.S. at 291. We therefore review our precedent as to whether the First Amendment might preclude Howard's substantive due process claim. In *Thaddeus-X*, we held that *Graham* prohibited the application of substantive due process to prisoners' claim that defendants retaliated against them for exercising their First Amendment rights. 175 F.3d at 387–88 (concluding that *Graham* precluded application of a "shocks the conscience" test "when prisoners claim retaliation in violation of an enumerated constitutional right"). But in *Handy-Clay*, we applied the "shocks the conscience" test to a public employee's claim that defendants violated her substantive due process rights by firing her in retaliation for her allegations of corruption and mismanagement of public funds. *See Handy-Clay*, 695 F.3d at 547. There, we reasoned that

*Graham* prohibited the plaintiff's substantive due process claim because defendants' alleged actions would not shock the conscience "but for the allegations of First Amendment violations," and the enumerated First Amendment constitutional right was available as a source of protection. *Id.* (quoting *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005), then citing *Thaddeus-X*, 175 F.3d at 387). *Handy-Clay* suggests that a court should evaluate whether the conduct would not be "shocking" under the substantive due process test but for the violation of an enumerated constitutional right; if so, that enumerated right governs instead of due process. *Id.*

Here, Defendants intentionally conducted an unfounded criminal investigation and prosecution, threatening Howard's employment and subjecting her to groundless criminal accusations. This case is factually distinct from *Handy-Clay*, where the plaintiff alleged only that defendants terminated her from her job in retaliation for her protected speech. *See id.* at 537. Howard's allegations that Defendants intentionally subjected her to a sustained malicious prosecution can shock the conscience regardless of whether they did so in retaliation for her protected speech. On these specific facts, Howard's substantive due process claim is not subsumed by the enumerated First Amendment right.

We conclude, however, that existing precedent does not clearly establish that a plaintiff alleging a First Amendment retaliation claim may also obtain relief under substantive due process. Given our decisions in *Thaddeus-X* and *Handy-Clay*—which held that certain claims for First Amendment retaliation preclude reliance on substantive due process—Howard's substantive due process right was not clearly established at the time of Defendants' alleged conduct to provide them with "fair warning" that their conduct would constitute a substantive due process violation. *Pelzer*, 536 U.S. at 740.

We therefore reverse the district court's denial of qualified immunity as to Howard's substantive due process claim because that right was not "clearly established" at the time of Defendants' conduct. This determination also resolves Howard's civil conspiracy claim regarding conspiracy to violate her substantive due process rights.

### 3. Civil Conspiracy

A civil conspiracy under § 1983 is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)); *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To prevail, the plaintiff must offer evidence that (1) a single plan existed; (2) the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of her constitutional or federal statutory rights; and (3) an overt act was committed in furtherance of the conspiracy that caused injury. *Bazzi*, 658 F.3d at 602. "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks*, 771 F.2d at 944.

Relevant to her First Amendment retaliation claim, Howard sets out a civil conspiracy claim in Count IV, alleging that Vailliencourt and Taylor, "continue[d] to pursue and/or refuse to dismiss criminal action against Plaintiff despite the fact that they knew they had no probable cause to support that Plaintiff had committed any crime whatsoever."

Defendants contend that they are entitled to qualified immunity because Howard has not pled the elements of civil conspiracy with sufficient specificity. Howard alleges that Defendants Taylor and Vailliencourt sought criminal charges against her despite knowing that there was "no evidence" to support any charge of perjury. As explained above, the Defendants' shared purpose

to retaliate against Howard for exercising her First Amendment right may be inferred from the alleged facts that Vailliencourt and Taylor secretly investigated Howard after the hearing of March 17, 2017, prohibited her from attending a June 2017 hearing of her probationer, sent a letter to her employer accusing her of perjury without basis, and prohibited her from working in Livingston County courts. Despite having no basis for further investigation, Defendants also directed the Michigan state police to investigate Howard after the Michigan Department of Corrections, her employer, found no evidence that she committed perjury at the March 17 hearing. Viewing the Complaint in the light most favorable to Howard, the civil conspiracy allegations regarding Howard's First Amendment retaliation claim are sufficient to survive the motion to dismiss.

### D. Tortious Interference with Business Relationship

To prevail on a claim of tortious interference under Michigan law, the plaintiff must offer evidence of (1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff. *See, e.g., Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc*., 898 F.3d 710, 715 (6th Cir. 2018) (citing *Warrior Sports, Inc. v. Nat'l Coll. Athletic Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010)). "'[T]he interference with a business relationship must be improper in addition to being intentional.'" *Id*. (quoting *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 326 (6th Cir. 2014)).

Howard alleges that she had a business relationship with MDOC based on her employment as a probation officer, and that Vailliencourt and Taylor knew of this relationship. She further alleges that the prosecutors "intentionally interfered" with this business relationship by knowingly providing MDOC with false accusations of perjury, and that they "obstruct[ed] her job duties" by

refusing to prosecute any probation violations that would require Howard's testimony; refusing to call her as a witness; and banning her from entering the courthouse and the prosecutor's office. Howard adequately pled the elements of her tortious interference claim under Michigan law, which include her allegations that Defendants intentionally disrupted that relationship, caused her to be suspended without pay, and made false accusations of perjury to her employer.

Defendants claim state law governmental immunity, which the district court denied. As a government officer or employee, Taylor must show that his actions were taken in good faith or were not taken with malice to secure governmental immunity on an individual basis against an intentional tort suit  Mich. Comp. Laws Ann. § 691.1407(2); *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (2008) (holding that a governmental defendant is entitled to immunity for intentional torts if "(a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial"). As the "highest elective or highest appointive executive official of [a] level[] of government," Vailliencourt is entitled to immunity if he acted within the scope of his executive authority. Mich. Comp. Laws Ann. § 691.1407(5).

The complaint alleges that Taylor prosecuted Howard after his own investigation and an internal investigation by MDOC revealed no evidence of wrongdoing. Reading those allegations in the light most favorable to Howard, we can't conclude that Taylor "honestly believed that he had probable cause." *Odom*, 760 N.W.2d at 229. That is fatal to his claim of state law governmental immunity.

With respect to Vailliencourt, whether given acts are within an officials' executive authority depends on factors "including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Petipren v. Jaskowski*, 833 N.W.2d 247, 255 (Mich. 2013) (quoting American Transmissions, Inc. v. Attorney General, 560 N.W.2d 50, 52-53 (Mich. 1997)) (noting that "[a]n official's motive or intent has no bearing on the scope of his or her executive authority"). As used in Mich. Comp. Laws § 691.1407(5), "executive authority" "means all authority vested in the highest executive official by virtue of his or her position in the executive branch." *Id.* at 257. Nowhere do Michigan law permit county prosecutors to make false accusations of perjury. *See* Mich. Comp. Laws §§ 49.11–49.160. Therefore, it can be inferred from the Complaint that Vailliencourt acted outside his executive authority as county prosecutor by making unfounded perjury accusations.

Because Howard's Complaint satisfactorily alleges the elements of tortious interference with business relationship and alleges that the conduct supporting the interference by Taylor was taken in bad faith, and that the conduct supporting the interference by Vaillencourt was outside the scope of his executive authority, governmental immunity is not warranted for either Defendant at this stage.

## V. CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court as to Howard's Fourteenth Amendment substantive due process claim because the governing law was not clearly established. On the remaining claims, we **AFFIRM** the judgment of the district court that Howard has adequately pled claims for violation of her First Amendment rights, federal civil

conspiracy to deprive her of First Amendment rights, and a state law claim of tortious interference with business relationship. At this juncture, the allegations in the complaint are sufficient to withstand a motion to dismiss, and Defendants have failed to demonstrate that any form of immunity bars those claims from proceeding. The case is remanded to the district court for further proceedings consistent with this opinion.

THAPAR, Circuit Judge, concurring in part and dissenting in part. While Vailliencourt and Taylor aren't entitled to absolute, sovereign, or state-law immunity, they're entitled to qualified immunity. That should be the end of Howard's federal case. Yet the majority keeps her First Amendment and civil-conspiracy claims alive by denying qualified immunity. I respectfully dissent in part.

I.

Let's start with a point of agreement: Vailliencourt and Taylor aren't entitled to absolute or sovereign immunity for their investigatory actions.[1]

Prosecutors are absolutely immune in their personal capacity for activities that are "intimately associated" with criminal trials and sentencings. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such activities also entitle prosecutors to sovereign immunity. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009). For example, when a prosecutor interviews witnesses and evaluates evidence in preparation for trial, he is protected by sovereign and absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). But when he searches for evidence like a detective or police officer, he receives only qualified immunity. *Id.*

Here, the complaint alleges that Vailliencourt and Taylor performed a secret, unjustified investigation to determine whether Howard committed perjury. Then Vailliencourt sent a letter to Howard's supervisor and asked the state police to further investigate Howard. Since these investigatory tasks weren't done in preparation for a trial or hearing, the prosecutors aren't entitled to absolute or sovereign immunity based on Howard's complaint. *See Imbler*, 424 U.S. at 430.

---

[1] We normally consider each officer individually to determine whether he receives immunity. *Cf. Crittindon v. LeBlanc*, 37 F.4th 177, 201 (5th Cir. 2022) (Oldham, J., dissenting) ("[T]he majority commits the tell-tale mistake that courts make when all else fails to deny qualified immunity: It lumps the defendants together."). Here, I consider Vailliencourt and Taylor together because the complaint alleges that they both participated in the investigation.

However, all that may change with discovery. So on remand, the district court should allow limited discovery to determine whether Vailliencourt and Taylor's actions were really investigative rather than prosecutorial. *See Robertson v. Lucas*, 753 F.3d 606, 623 (6th Cir. 2014) (allowing limited discovery because "the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation" (cleaned up)).

II.

Even though Vailliencourt and Taylor aren't entitled to absolute or sovereign immunity at this stage, they're entitled to qualified immunity. *See Stockdale v. Helper*, 979 F.3d 498, 506 (6th Cir. 2020). To overcome qualified immunity, Howard must allege that (1) the prosecutors' actions were unlawful or unconstitutional, and (2) "the unlawfulness of their conduct was clearly established at the time." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Howard hasn't carried that burden.

A.

First, substantive due process. While I disagree with the majority that Howard pleaded a constitutional violation, I agree that the law wasn't clearly established. So the prosecutors are entitled to qualified immunity on this claim. *Id.*

B.

Unlike the majority, I believe Vailliencourt and Taylor are also entitled to qualified immunity on Howard's First Amendment claim.

Qualified immunity poses a high hurdle for Howard. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (cleaned up). That's especially true for

First Amendment claims, which are so fact dependent. *Cf. id* at 11–12 (discussing the fact-dependent Fourth Amendment context); *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (First Amendment). Thus, our clearly-established-law analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (citation omitted).

Howard hasn't cleared that hurdle. To see why, consider *Stockdale*, in which we granted qualified immunity to a prosecutor in similar circumstances. In *Stockdale*, two police officers were placed on leave during an investigation into misconduct at the police department. 979 F.3d at 500–01. The investigation didn't turn up enough evidence to fire the officers. *Id.* at 501. But the prosecutor still had concerns about them, which she shared with the city manager. *Id.* Based on those concerns, the city manager fired the officers. *Id.* at 501–02. In response, the officers sued the prosecutor for violating their First Amendment rights. *Id.* at 502. Although the court denied the prosecutor absolute immunity, it held that she was entitled to qualified immunity. *Id.* at 507. Since the prosecutor wasn't the one who fired the officers, she hadn't violated any clearly established law. *Id.*

So too here. As the majority explains, both prosecutors investigated Howard, and then Vailliencourt sent a letter "to Howard's supervisor" that put her job "in jeopardy." Maj. Op. 20. But just like *Stockdale*, Vailliencourt and Taylor didn't have decision-making authority, so no case puts their actions "beyond debate." *Stockdale*, 979 F.3d at 506 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The majority attempts to distinguish *Stockdale* on two grounds, neither persuasive.

First, it notes that *Stockdale* was an appeal of summary judgment with a complete record, but here we're reviewing the denial of a motion to dismiss based solely on the complaint. This

purported distinction doesn't hold up. Indeed, the procedural posture of this case actually cuts against Howard—if she can't plausibly *allege* a violation of her clearly established rights, she certainly can't hope to *show* such a violation at summary judgment. *See Crawford*, 15 F.4th at 763. Moreover, the Supreme Court has consistently applied qualified immunity at the motion-to-dismiss stage, so we can too. *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011); *see also Crawford*, 15 F.4th at 764.

Second, the majority claims that *Stockdale* doesn't apply because the absolute-immunity question was closer there than it is here. However, as *Stockdale* makes clear, our absolute- and qualified-immunity analyses are different. Absolute immunity depends on the role the prosecutor performs. *Stockdale*, 979 F.3d at 502. Qualified immunity depends on whether the prosecutor violated clearly-established legal rights. *Id.* at 506. True, *Stockdale* referenced absolute immunity in its qualified-immunity analysis. *Id.* at 506–07. But it did so to show that the "tangle of cases" about absolute immunity would confuse many prosecutors. *Id.* at 506. That suggested the law was not clearly established. *Id.* at 507. The same is true here: the law was not clearly established regardless of whether we consider the closeness of the absolute-immunity question.

Finally, the majority cites two cases that purportedly put the illegality of the prosecutors' actions "beyond debate." *See Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000); *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). But the majority cites them only for broad, general propositions. Maj. Op. 20 (citing *Leary* for the proposition that accusations of wrongdoing are protected speech and *Fritz* for the proposition that adverse action can include harming a person's reputation). And general propositions can't clearly establish law. *See Rivas-Villegas*, 142 S. Ct. at 8. So the prosecutors are entitled to qualified immunity.

C.

That leaves two loose ends: Howard's civil-conspiracy and tortious-interference claims.

First, Howard alleges that Vailliencourt and Taylor conspired to violate her constitutional rights. But a conspiracy claim requires an underlying violation of constitutional rights. *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). Because Howard's constitutional claims fail, her conspiracy claim fails too.

Second, Howard claims that the prosecutors tortiously interfered with her business relationship (her employment). I agree with the majority that this claim can proceed because the prosecutors aren't entitled to immunity under state law.

\*       \*       \*

I respectfully dissent in part.